

November 4, 2016

 BIBIANA M GARCIA
18151 NE 31ST CT
AVENTURA, FL 33160

**Account Number:**
**Property Address:** 18151 NE 31ST CT 1908
AVENTURA, FL 33160

Dear Customer(s):

The enclosed communication has been directed under a state or federal law or program.

Select Portfolio Servicing, Inc. (SPS), the mortgage servicer on the above referenced account, is sending this to you to provide information regarding the lien on the real property referenced above. Our records indicate that your obligation has either been discharged or is subject to an automatic stay order under the United States Bankruptcy Code. This notice and the enclosed documents are for compliance and informational purposes only and do not constitute a demand for payment or an attempt to collect such obligation.

Even though your personal liability on the note may be discharged or subject to an automatic stay, the terms of the mortgage remain in effect and the owner of the mortgage, as lien holder, continues to have a lien on the real property.

If you have any questions or concerns regarding the enclosed communication, please contact our Customer Service Department. Our toll-free number is 800-258-8602, and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**



  

**HELPING YOU STAY IN YOUR HOME.**

MAKING HOME AFFORDABLE

*You may be able to make your payments more affordable.*
**Act now to get the help you need!**

November 4, 2016

BIBIANA M GARCIA
18151 NE 31ST CT
AVENTURA, FL 33160

**Account Number:** ▓▓▓▓▓▓
**Property Address:** 18151 NE 31ST CT 1908
AVENTURA, FL 33160

Dear Customer(s),

**Congratulations!** You are eligible for a Home Affordable Modification.  As previously described, if you comply with the terms of the Home Affordable Modification Trial Period Plan, we will modify your mortgage and waive all prior late charges that remain unpaid.

The enclosed Home Affordable Modification Agreement ("Modification Agreement") reflects the proposed terms of your modified mortgage.

We also have enclosed a Notice of Special Flood Insurance Acknowledgement to inform you that the building or mobile home securing the lien for which you applied for a modification is located in an area prone to high flood risks.

**How to Accept This Offer:**

**STEP 1   COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE**

To accept this offer, you must complete, sign and return both copies of the Modification Agreement and the Notice of Special Flood Insurance Acknowledgement by **November 19, 2016.** You may use the enclosed, pre-paid envelope to return the documents. If the Modification Agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized copies to us.

We encourage you to make a copy of all documents for your records. If you do not send both signed copies of the Modification Agreement by the above date, you must contact us if you still wish to be considered for this program and have your account modified.

**STEP 2   CONTINUE TO MAKE YOUR TRIAL PERIOD PAYMENTS ON TIME**

Be certain to make any remaining trial period payments on or before the dates they are due. If the trial period payments are made after their due dates or in amounts different from the amount required, your loan may not be modified.

To better understand the proposed terms of your modified mortgage, please read the attached summary of your modified mortgage and the Modification Agreement.



Once your first mortgage is permanently modified under HAMP if you have a second mortgage on the same property, you may be eligible for a modification on your second mortgage under the Second Lien Modification Program (2MP). Please visit www.MakingHomeAffordable.gov/programs/second-mortgage-help/Pages/default.aspx to see if your second mortgage servicer is participating in 2MP. If your second mortgage servicer is participating, you should hear from them within 60 days. If not, please contact them directly to see if you are eligible for a modification.

If you have any questions, your assigned Relationship Manager, Frieda Maluia, can be reached toll free at 800-258-8602 Ext. 36832 or by email at Relationship.Manager@SPServicing.com.

At SPS, any of our trained servicing representatives can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available mortgage resolution options. If you have any questions or concerns, please contact our Loan Resolution Department. Our toll-free number is 888-818-6032, and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

We look forward to hearing from you no later than **November 19, 2016.**

Sincerely,

Select Portfolio Servicing, Inc.

The *Making Home Affordable Program* was created to help millions of homeowners refinance or modify their mortgages. As part of this program, we – your mortgage servicer – and the Federal Government are working to offer you options to help you stay in your home.

*Attachments: Summary of Your Modified Mortgage, Two copies of the Modification Agreement, Notice of Special Flood Insurance Acknowledgement*

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**

**SUMMARY**

## IMPORTANT INFORMATION REGARDING YOUR MODIFICATION.

Under the Home Affordable Modification Program, permanent modifications typically go in to effect the first or second month after the customer successfully completes the Trial Period. However, we required additional time to process your permanent modification and, as a result, we are taking the following steps to permanently modify your mortgage and bring your account current:

- We will make your permanent modification effective as of the date it would have become effective had we processed your modification in a timely manner. This date is known as the Modification Effective Date. The Modification Effective Date for your account is November 1, 2016.

- Any payments you made after November 1, 2016 until the time we converted your Trial Period to a permanent modification will be applied as payments under your new modified mortgage terms.

- Any shortfalls between the actual payments you made after November 1, 2016, including any missed payments, and payments that are due under the modification will be advanced by us, and will be payable and due either at the end of your mortgage term or when you pay off your mortgage. This amount will not accrue interest and is referred to in your Modification Agreement as "Other Deferred Amounts." Your Other Deferred Amounts total is $0.00 This amount may be in addition to other deferrals of principal you may have received to help achieve an affordable mortgage payment.

Your first modified payment will be due on December 1, 2016.

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage account balance. In addition, your mortgage insurance premium may increase as a result of the higher mortgage account balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE.** The interest rate on your modified mortgage will be adjusted as noted in the attached Modification Agreement in Section 3.C.

**TERM EXTENSION.** To reduce your mortgage payment, we will extend the term of your mortgage. This means we will spread your payments over a longer period.

**DEFERRAL OF PRINCIPAL.** To further reduce your mortgage payment, we will defer collection of and not collect interest on **$76,940.37** of your outstanding principal. You will not be required to make monthly payments on that portion. This portion of principal will be due when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due.

**PRINCIPAL REDUCTION ALTERNATIVE.** You may be eligible to have some of your principal forgiven on a deferred basis. If you make your monthly mortgage payments on time, we will forgive **$12,763.46** of the principal balance of your loan each year on the anniversary of your first trial period payment date for three years. You will lose this benefit if your modified loan loses good standing, which means that the equivalent of three full monthly payments are due and unpaid on the last day of any month, at any time during this three year period, including all accrued and unapplied amounts, even if the mortgage loan is later brought current. Any principal forgiveness will be reported to the Internal Revenue Service and may have tax consequences. Therefore, you are advised to seek guidance from a tax professional. Please contact us at 888-818-6032 if you do not want principal forgiveness, we may have other modification options for you.



**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. **Select Portfolio Servicing, Inc.** will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that **Select Portfolio Servicing, Inc.** must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be **$256.30**. This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.

**ESCROW SHORTAGE.** Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of **$2,382.49**. You may pay this amount over a **Five - year (60 months)** period. This monthly payment has already been included in the monthly escrow payment stated above. **If you wish to pay the total shortage now in a lump sum, please contact us. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.**

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3.C. showing your payment plan for the life of your modified mortgage after the trial period.

**FEES.** There are no fees or other charges for this modification.

**REPRESENTATIONS. Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth in the "My Representations" section are true and accurate. If you have any questions, please contact us at 888-818-6032.**

**BORROWER INCENTIVE.** If you make your monthly mortgage payments on time, you will accrue a monthly benefit equal to $66.50 [the lesser of: (i) $83.33 or (ii) one-half of the reduction in the monthly mortgage payment] for the first five years of your modification. As long as your mortgage loan does not lose good standing, which means that the equivalent of three full monthly payments are due and unpaid on the last day of any month, we will apply your accrued monthly benefit to reduce your principal balance after each of the first through fifth anniversaries of the month in which the trial period plan is executed. In addition, you will earn a one-time benefit of $5,000 if you remain in good standing for an additional sixth year. We will apply this one-time benefit to reduce your principal balance after the sixth anniversary of the month in which your trial period plan was executed. If your modified loan loses good standing at any time during this six-year period, you will lose all unapplied principal reduction benefits and will no longer be eligible for additional principal reduction benefits, even if the mortgage loan is later brought current.

Investor Loan # ▮▮▮▮▮▮▮

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"):1  **BIBIANA M GARCIA**
Lender or Servicer ("Lender"): **Select Portfolio Servicing, Inc.**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **February 22, 2007**
Loan Number: ▮▮▮▮▮▮▮
Property Address [and Legal Description if recordation is necessary] ("Property"):
**18151 NE 31ST CT 1908
AVENTURA, FL 33160**

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants**. I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;
   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
   D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));
   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification**. I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.



1. If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3157                                                          1080472
Deferred Principal Balance
                                    00107280000045051510

3. **The Modification**. If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **November 1, 2016** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.  I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment was meant to be due on **November 1, 2016**. However, due to the adjustment of your final modification your first payment will actually be due on **December 1, 2016**.

A.    The Maturity Date will be: **April 1, 2037**.

B.    The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, Unpaid Amounts) less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$274,040.37** (the "New Principal Balance"). The New Principal Balance will consist of two (2) parts: (i) an amount which will accrue interest at the Note rate shown below, and on my monthly statement as Interest Bearing Principal Balance and (ii) an amount which will not accrue interest, shown below, and on my monthly statement as Deferred Principal Balance.

C.    **$76,940.37** of the New Principal Balance shall be deferred (the Deferred Principal Balance) and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance.  In addition, **$38,290.37** of the Deferred Principal Balance is eligible for forgiveness (the Deferred Principal Reduction Amount).  Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of your first trial period payment date for three years, the Lender shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount.  Application of the Deferred Principal Reduction Amount will not result in a new payment schedule.  The New Principal Balance less the Deferred Principal Balance shall be referred to as the Interest Bearing Principal Balance and this amount is **$197,100.00**. Interest at the rate of **2.000%** will begin to accrue on the Interest Bearing Principal Balance as of **October 1, 2016** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **November 1, 2016**.  My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Pay-ments |
|-------|---------------|--------------------------|-----------------------------------------------|------------------------------------------|-----------------------|-------------------|------------------------------|
| 1-5 | 2.000% | 10/01/2016 | $596.87 | $256.30, may adjust periodically | $853.17, may adjust periodically | 11/01/2016 | 60 |
| 6 | 3.000% | 10/01/2021 | $693.42 | May adjust periodically | May adjust periodically | 11/01/2021 | 12 |
| 7-21 | 3.375% | 10/01/2022 | $730.79 | May adjust periodically | May adjust periodically | 11/01/2022 | 174 |
| **A final balloon payment on the Interest Bearing Principal Balance of $125,163.34 is due on the Maturity Date.** | | | | | | | |

The Deferred Principal Balance of **$76,940.37** less any Deferred Principal Reduction Amount to which I am entitled will be due as a balloon payment on the earlier of, payoff of the Interest Bearing Principal Balance, transfer of the property or on the Modified Maturity Date. The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

I understand that any shortfalls between the actual payments I made after November 1, 2016 including any missed payments, and payments that are due under the modification will be advanced. This amount will not accrue interest and is referred as "Other Deferred Amounts." The Other Deferred Amounts total is $0.00.

The total remaining principal balance that will be due in a balloon payment at the maturity of my mortgage, will be the total of my Deferred Principal Balance and Other Deferred Amounts and the balloon payment resulting from the extended amortization of my mortgage, which will be $163,813.34.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar day after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my pay off balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owned under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G.  If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.  **Additional Agreements.**  I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or other Workout Plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.



D.  **Funds for Escrow Items.**  I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, 888-679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.



O.    That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

**BALLOON NOTICE.** In order to reach an affordable payment, we extended your amortization term, which is the rate or speed by which your mortgage is calculated to be paid off; however, your maturity term, which is the period of time until your mortgage becomes due and payable, could not be fully extended to an equal term. This is because the investor on your account allows us to change your amortization term but does not allow us to change the maturity term to match. As a result of the difference between these two periods, there will be an amount due $125,163.34 on the date your lien matures on April 1, 2037. The amount due at maturity is in addition to your monthly scheduled payment and the principal forbearance of $76,940.37 that you received as part of your modification.

In Witness Whereof, the Lender and I have executed this Agreement.

Select Portfolio Servicing, Inc.

_____ (Seal)
**BIBIANA M GARCIA**

_____ Date
11/14/16

By: _____     _____ (Seal)

_____ Date    _____ Date

_____[Space Below This Line For Acknowledgement]_____

**Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance
for National Flood Insurance Program Participating Communities**

**Customer Name:**
BIBIANA M GARCIA
18151 NE 31ST CT
AVENTURA, FL 33160

Dear Homeowner(s):

Select Portfolio Servicing, Inc. (SPS) is giving you this notice to inform you that:

The building or mobile home securing the loan for which you applied is or will be located in an area with special flood hazards.

The area has been identified by the Administrator of the Federal Emergency Management Agency (FEMA) as a special flood hazard area using FEMA's Flood Insurance Rate Map or the Flood Hazard Boundary Map for the following community: 120676. This area has a one percent (1%) chance of a flood equal to or exceeding the base flood elevation (a 100-year flood) in any given year. During the life of a 30-year mortgage loan, the risk of a 100-year flood in a special flood hazard area is 26 percent (26%).

Federal law allows a lender and borrower jointly to request the Administrator of FEMA to review the determination of whether the property securing the loan is located in a special flood hazard area. If you would like to make such a request, please contact us for further information.

- The community in which the property securing the loan is located participates in the National Flood Insurance Program (NFIP). Federal law will not allow us to make you the loan that you have applied for if you do not purchase flood insurance. The flood insurance must be maintained for the life of the loan. If you fail to purchase or renew flood insurance on the property, Federal law authorizes and requires us to purchase the flood insurance for you at your expense.

- At a minimum, flood insurance coverage purchased must be in an amount equal to the lesser of:

  1. The outstanding principal balance of all loans secured by the property (for home equity line(s) of credit, the full value of the credit line(s)); or
  2. The full insurable value of the buildings on the property and their contents if also taken as collateral; or
  3. The maximum amount of coverage available under the NFIP policy covering the type of building or collateral.

Flood insurance coverage under the NFIP is limited to the building or mobile home and any personal property that secures your loan and not the land itself.

- Federal disaster relief assistance (usually in the form of a low-interest loan) may be available for damages incurred in excess of your flood insurance if your community's participation in the NFIP is in accordance with NFIP requirements.

- Although you may not be required to maintain flood insurance on all structures, you may still wish to do so, and your mortgage lender may still require you to do so to protect the collateral securing the mortgage. If you choose not to maintain flood insurance on a structure and it floods, you are responsible for all flood losses relating to that structure.

Limitations: If the property is located in a community that participates in the NFIP but the property is also located in a Coastal Barrier Resource System (CBRS) or Otherwise Protected Area (OPA), NFIP coverage may not be available. Refer to the Standard Flood Hazard Determination Form or contact your licensed flood insurance professional to see if your property is in a CBRS or OPA, and if so, whether coverage under the NFIP or under a non-NFIP policy issued by a private insurance company is available.

Availability of Private Flood Insurance Coverage

Flood insurance coverage under the NFIP may be purchased through an insurance agent who will obtain the policy either directly through the NFIP or through an insurance company that participates in the NFIP. Flood insurance that provides the same level of coverage as a standard flood insurance policy under the NFIP may be available from private insurers that do not participate in the NFIP. You should compare the flood insurance coverage, deductibles, exclusions, conditions, and premiums associated with flood insurance policies issued on behalf of the NFIP and policies issued on behalf of private insurance companies and contact an insurance agent as to the availability, cost, and comparisons of flood insurance coverage.



Escrow Requirement for Residential Loans

Federal law may require a lender or its servicer to escrow all premiums and fees for flood insurance that covers any residential building or mobile home securing a loan that is located in an area with special flood hazards. If your lender notifies you that an escrow account is required for your loan, then you must pay your flood insurance premiums and fees to the lender or its servicer with the same frequency as you make loan payments for the duration of your loan. These premiums and fees will be deposited in the escrow account, which will be used to pay the flood insurance provider.

## Acknowledgement by Borrower(s)

Borrower(s) agrees to furnish, at Borrower(s) expense, a flood insurance policy satisfying Lender's requirements on or before closing of the above referenced loan and maintain same thereafter. Delivery of these notices is hereby acknowledged.

Borrower Signature_____ Date____11|14|16____

BIBIANA M GARCIA

Borrower Signature_____ Date_____



Investor Loan # 

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"):1  **BIBIANA M GARCIA**
Lender or Servicer ("Lender"): **Select Portfolio Servicing, Inc.**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **February 22, 2007**
Loan Number:
Property Address [and Legal Description if recordation is necessary] ("Property"):
**18151 NE 31ST CT 1908
AVENTURA, FL 33160**

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B.  I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.



---

1. If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **November 1, 2016** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.    I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment was meant to be due on **November 1, 2016**. However, due to the adjustment of your final modification your first payment will actually be due on **December 1, 2016**.

    A.    The Maturity Date will be: **April 1, 2037.**

    B.    The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, Unpaid Amounts) less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$274,040.37** (the "New Principal Balance"). The New Principal Balance will consist of two (2) parts: (i) an amount which will accrue interest at the Note rate shown below, and on my monthly statement as Interest Bearing Principal Balance and (ii) an amount which will not accrue interest, shown below, and on my monthly statement as Deferred Principal Balance.

    C.    **$76,940.37** of the New Principal Balance shall be deferred (the Deferred Principal Balance) and will be treated as a non-interest bearing principal forbearance.  I will not pay interest or make monthly payments on the Deferred Principal Balance.  In addition, **$38,290.37** of the Deferred Principal Balance is eligible for forgiveness (the Deferred Principal Reduction Amount).  Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of your first trial period payment date for three years, the Lender shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule.   The New Principal Balance less the Deferred Principal Balance shall be referred to as the Interest Bearing Principal Balance and this amount is **$197,100.00**. Interest at the rate of **2.000%** will begin to accrue on the Interest Bearing Principal Balance as of **October 1, 2016** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **November 1, 2016**.   My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Pay-ments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 10/01/2016 | $596.87 | $256.30, may adjust periodically | $853.17, may adjust periodically | 11/01/2016 | 60 |
| 6 | 3.000% | 10/01/2021 | $693.42 | May adjust periodically | May adjust periodically | 11/01/2021 | 12 |
| 7-21 | 3.375% | 10/01/2022 | $730.79 | May adjust periodically | May adjust periodically | 11/01/2022 | 174 |
| **A final balloon payment on the Interest Bearing Principal Balance of $125,163.34 is due on the Maturity Date.** | | | | | | | |

The Deferred Principal Balance of **$76,940.37** less any Deferred Principal Reduction Amount to which I am entitled will be due as a balloon payment on the earlier of, payoff of the Interest Bearing Principal Balance, transfer of the property or on the Modified Maturity Date. The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

I understand that any shortfalls between the actual payments I made after November 1, 2016 including any missed payments, and payments that are due under the modification will be advanced. This amount will not accrue interest and is referred as "Other Deferred Amounts." The Other Deferred Amounts total is $0.00.

The total remaining principal balance that will be due in a balloon payment at the maturity of my mortgage, will be the total of my Deferred Principal Balance and Other Deferred Amounts and the balloon payment resulting from the extended amortization of my mortgage, which will be $163,813.34.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar day after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my pay off balance.

D.     I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.     If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.     I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owned under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G.     If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements.**  I agree to the following:

A.     That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.     That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or other Workout Plan that I previously entered into with Lender.

C.     To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.



D. **Funds for Escrow Items**. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer.   If Lender exercises this option, Lender shall give me notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.   That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3.  A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan.  Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.   That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.   That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement.  I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature.  At Lender's option, this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L.   Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, 888-679-MERS.  In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.  In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.



N.   That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.    That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment.  Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

**BALLOON NOTICE.** In order to reach an affordable payment, we extended your amortization term, which is the rate or speed by which your mortgage is calculated to be paid off; however, your maturity term, which is the period of time until your mortgage becomes due and payable, could not be fully extended to an equal term. This is because the investor on your account allows us to change your amortization term but does not allow us to change the maturity term to match.  As a result of the difference between these two periods, there will be an amount due $125,163.34 on the date your lien matures on April 1, 2037. The amount due at maturity is in addition to your monthly scheduled payment and the principal forbearance of $76,940.37 that you received as part of your modification.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)

**Select Portfolio Servicing, Inc.**            **BIBIANA M GARCIA**

_____ Date

By: _____            _____ (Seal)

_____ Date            _____ Date

_____[Space Below This Line For Acknowledgement]_____

### Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance for National Flood Insurance Program Participating Communities

**Customer Name:**
BIBIANA M GARCIA
18151 NE 31ST CT
AVENTURA, FL 33160

Dear Homeowner(s):

Select Portfolio Servicing, Inc. (SPS) is giving you this notice to inform you that:

The building or mobile home securing the loan for which you applied is or will be located in an area with special flood hazards.

The area has been identified by the Administrator of the Federal Emergency Management Agency (FEMA) as a special flood hazard area using FEMA's Flood Insurance Rate Map or the Flood Hazard Boundary Map for the following community: 120676. This area has a one percent (1%) chance of a flood equal to or exceeding the base flood elevation (a 100-year flood) in any given year. During the life of a 30-year mortgage loan, the risk of a 100-year flood in a special flood hazard area is 26 percent (26%).

Federal law allows a lender and borrower jointly to request the Administrator of FEMA to review the determination of whether the property securing the loan is located in a special flood hazard area. If you would like to make such a request, please contact us for further information.

- The community in which the property securing the loan is located participates in the National Flood Insurance Program (NFIP). Federal law will not allow us to make you the loan that you have applied for if you do not purchase flood insurance. The flood insurance must be maintained for the life of the loan. If you fail to purchase or renew flood insurance on the property, Federal law authorizes and requires us to purchase the flood insurance for you at your expense.

- At a minimum, flood insurance coverage purchased must be in an amount equal to the lesser of:
    1. The outstanding principal balance of all loans secured by the property (for home equity line(s) of credit, the full value of the credit line(s)); or
    2. The full insurable value of the buildings on the property and their contents if also taken as collateral; or
    3. The maximum amount of coverage available under the NFIP policy covering the type of building or collateral.

Flood insurance coverage under the NFIP is limited to the building or mobile home and any personal property that secures your loan and not the land itself.

- Federal disaster relief assistance (usually in the form of a low-interest loan) may be available for damages incurred in excess of your flood insurance if your community's participation in the NFIP is in accordance with NFIP requirements.

- Although you may not be required to maintain flood insurance on all structures, you may still wish to do so, and your mortgage lender may still require you to do so to protect the collateral securing the mortgage. If you choose not to maintain flood insurance on a structure and it floods, you are responsible for all flood losses relating to that structure.

Limitations: If the property is located in a community that participates in the NFIP but the property is also located in a Coastal Barrier Resource System (CBRS) or Otherwise Protected Area (OPA), NFIP coverage may not be available. Refer to the Standard Flood Hazard Determination Form or contact your licensed flood insurance professional to see if your property is in a CBRS or OPA, and if so, whether coverage under the NFIP or under a non-NFIP policy issued by a private insurance company is available.

Availability of Private Flood Insurance Coverage

Flood insurance coverage under the NFIP may be purchased through an insurance agent who will obtain the policy either directly through the NFIP or through an insurance company that participates in the NFIP. Flood insurance that provides the same level of coverage as a standard flood insurance policy under the NFIP may be available from private insurers that do not participate in the NFIP. You should compare the flood insurance coverage, deductibles, exclusions, conditions, and premiums associated with flood insurance policies issued on behalf of the NFIP and policies issued on behalf of private insurance companies and contact an insurance agent as to the availability, cost, and comparisons of flood insurance coverage.



Escrow Requirement for Residential Loans

Federal law may require a lender or its servicer to escrow all premiums and fees for flood insurance that covers any residential building or mobile home securing a loan that is located in an area with special flood hazards. If your lender notifies you that an escrow account is required for your loan, then you must pay your flood insurance premiums and fees to the lender or its servicer with the same frequency as you make loan payments for the duration of your loan. These premiums and fees will be deposited in the escrow account, which will be used to pay the flood insurance provider.

### Acknowledgement by Borrower(s)

Borrower(s) agrees to furnish, at Borrower(s) expense, a flood insurance policy satisfying Lender's requirements on or before closing of the above referenced loan and maintain same thereafter. Delivery of these notices is hereby acknowledged.

Borrower Signature_____ Date __11__|__14__|__16__

BIBIANA M GARCIA

Borrower Signature_____ Date_____





**Authorization for Withdrawal and Direct Payment Agreement**

**Account Information**

Customer Name: _____     Phone Number: _____

SPS Account Number: _____

**Bank Information**

Bank Name: _____

This a **CHECKING** account / **SAVINGS** account     Bank Routing Number: _____

Bank Account Number: _____

**Withdrawal Options**

Date of Withdrawal: (1st – 31st) _____     Additional Amount: _____
Please indicate the date each month you want the recurring withdrawal made.     This amount will be withdrawn in addition to your regular payment amount.
The recurring withdrawal date must be before the end of your grace period.

**For "Payment Option" accounts:** Please indicate below which monthly payment option you wish to withdraw. Please note: paying the minimum monthly payment may cause your principal balance to increase and may cause you to lose equity in your home. Paying the interest only payment will not reduce your principal balance and may result in a balloon payment at the end of your mortgage. Please contact us at (800) 258-8602 to discuss your available payment options.

◻ Minimum          ◻ Interest Only          ◻ Fully Amortized 30 Year          ◻ Accelerated 15 Year

---

## TAPE VOIDED CHECK OR DEPOSIT SLIP IN THIS SPACE

Return to:
Select Portfolio Servicing, Inc.
ATTN: Cashiering Dept
PO Box 65450
Salt Lake City, UT 84165-0450

Or fax to:
801-269-4499
ATTN: Cashiering Dept

---

**Signature Authorization – You must sign below**

I authorize Select Portfolio Servicing, Inc. (SPS) to automatically debit my bank account monthly for the amount of my full mortgage payment plus any additional amount as indicated above. I understand that the payment amount may vary due to changes in escrow requirements or principal and interest payments for adjustable type mortgages, if applicable.  If the requested withdrawal date falls on a weekend or holiday, the withdrawal will occur the following business day.

I agree that SPS will not be liable to me if my bank refuses or returns a debit, regardless of the reason for refusal or return; if my bank mishandles or delays a payment; or if I have not provided SPS with correct information regarding my account or payment(s). I understand that I may be charged a fee and/or late charge for any item returned due to insufficient funds, as allowed by applicable law.

I understand that I am in full control of my account and may change the terms of this automatic withdrawal at any time by giving SPS 10 days advance written notification of any change. Furthermore, I may terminate this service by providing SPS 10 days advance verbal or written notification.

SPS is authorized to debit my bank account until SPS has received 10 days advance notification from me to terminate this service.

Signature: _____     Date: _____

**Please allow at least forty-five (45) days for processing. We will notify you when the automatic withdrawal will commence. UNTIL YOU RECEIVE THAT NOTICE, YOU MUST CONTINUE TO REMIT ANY PAYMENTS THAT COME DUE. Your account must be current to commence automatic withdrawal.**

